United States District Court
Southern District of Texas
**ENTERED**
January 22, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KOCH PROJECT SOLUTIONS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-20-3479 |
| | § | |
| ALLIANCE PROCESS PARTNERS, LLC, | § | |
| d/b/a INTERNATIONAL ALLIANCE | § | |
| GROUP, and TRITEN CORPORATION, | § | |
| | § | |
| Defendant(s), | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Koch Project Solutions, LLC, ("KPS"), brings this action against defendants, Alliance Process Partners, LLC, d/b/a International Alliance Group ("IAG"), and Triten Corporation ("Triten") (collectively, "Defendants"), asserting claims for declaratory judgment under 28 U.S.C. §§ 2201-2202, arising from "Defendants' public and erroneous allegations that KPS is unlawfully competing with Defendants."[1]  Pending before the court is Defendants' Motion to Dismiss or Stay Plaintiff's Declaratory Judgment Action ("Defendants' Motion to Dismiss or Stay") (Docket Entry No. 7), and Plaintiff Koch Project Solutions, LLC's Response in Opposition to Defendants' Motion to Dismiss or Stay ("Plaintiff's Response") (Docket Entry No. 14), in which KPS

---

[1]Koch Project Solution's, LLC's Original Complaint for Declaratory Relief ("Plaintiff's Complaint"), Docket Entry No. 1, p. 1.  Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system.

requests leave to amend "[i]f the Court is inclined to agree that dismissal is warranted."[2]  For the reasons explained below, Plaintiff will be ordered to supplement the jurisdictional facts stated in Plaintiff's Complaint, Defendants' Motion to Dismiss will be denied, Plaintiff's request to amend will be denied as moot, and Defendants' Motion to Stay will be granted.

## I. **Factual Allegations**

KPS alleges that it was established in April of 2019, and that it offers a variety of services and expertise to clients in multiple industries, including the manufacturing, refining, and energy sectors.[3]  KPS's leadership includes: Paul Switzer ("Switzer"), President; Price Chumley ("Chumley"), Vice-President for Operations; Antoine Schellinger ("Schellinger"), Senior Vice-President for Business Development; John Burrus ("Burrus"), Vice-President for Project Services; and James Woodard ("Woodard"), Director of Technical Services.  KPS alleges that "[a]t some point before working for KPS, these individuals were employed or

---

[2]Plaintiff Koch Project Solutions, LLC's Response in Opposition to Defendants' Motion to Dismiss or Stay ("Plaintiff's Response"), Docket Entry No. 14, p. 11 n. 2.  <u>See also</u> Plaintiff Koch Project Solutions, LLC's Supplement to its Response in Opposition to Defendants' Motion to Dismiss or Stay ("Plaintiff's Supplement"), Docket Entry No. 15, p. 2 (restating request to amend "should the court require additional allegations").

[3]KPS's Complaint, Docket Entry No. 1, p. 3 ¶ 9.

otherwise retained by one or more Defendants."[4]  KPS alleges that
during their respective tenures with defendant Triten, Chumley,
Schellinger, Burrus, and Woodard (collectively, the "Former
Employees") each signed an agreement setting forth certain post-
employment obligations that prohibit them from soliciting or
accepting certain business from Triten's customers for a 24-month
period following their termination.[5]  KPS alleges that Switzer was
a former Triten consultant who signed a "Consulting Agreement"
containing post-employment obligations that prohibit him from
soliciting business from or encouraging any of 16 named entities to
discontinue working with or altering their relationship with IAG
for a 12-month period following his termination.[6]  KPS alleges that
Switzer and the Former Employees departed Triten for better
opportunities — Schellinger in July of 2018, Switzer in May of
2019, Woodard in September of 2019, and Chumley and Burrus in
November of 2019.[7]

KPS alleges that in March of 2020 Defendants advised the
president of KPS's parent company that they believed KPS was

---

[4]Id. at 3-4 ¶ 10.

[5]Id. at 4 ¶ 11 & n. 3 (asserting that the agreements signed by
Chumley, Burrus, and Woodard are attached as Exhibits 1, 2, and 3,
respectively).

[6]Id. at 5 ¶ 13 & n. 5 (asserting that "[t]he Consultant
Agreement is attached as Exhibit 4").

[7]Id. at 5-6 ¶ 14.

involved in inducing the Former Employees to violate their
respective agreements by causing them to solicit or accept business
on behalf of KPS in competition with Triten and soliciting other
Triten employees.[8]   KPS alleges that

> [s]hortly thereafter, in a Texas state court lawsuit,
> Defendants elevated their objections in a public filing
> naming KPS's direct and indirect parent companies (Koch
> Engineered Solutions, LLC, and Koch Industries, Inc.),
> over whom the state court does not have jurisdiction, as
> third-party defendants to a lawsuit involving Switzer's
> individual claim for unpaid compensation owed by Triten
> and/or IAG under his Consultant Agreement.   Despite
> referring to KPS in their pleadings, Defendants did not
> name KPS as a third-party defendant but nevertheless
> still accuse KPS of hiring away the Former Employees to
> compete for projects that "otherwise would have gone to
> Triten" by allegedly inducing the Former Employees to
> violate their Agreements.   Further, after being informed
> that they had sued the wrong party, Defendants declined
> to amend their pleading to include KPS or omit its parent
> companies.
>
> Defendants' accusations — which anyone, including
> potential clients, may now view as a matter of public
> record on the state court's docket — jeopardize KPS from
> being awarded projects by former Triten clients, as
> Defendants have claimed — and will undoubtedly continue
> to argue — that any such projects were awarded in
> violation of the Former Employees and Switzer's "non-
> compete obligations."
>
> KPS desires to remove the cloud over its name that
> has been engineered to prevent it from conducting
> business.   In order to clarify the rights and liabilities
> between the parties, and so that it may conduct business
> unimpeded, KPS seeks declaratory relief regarding its
> alleged role in directing the Former Employees and
> Switzer to violate their post-contractual obligations.[9]

---

[8] Id. at 6 ¶ 15.

[9] Id. at 6-7 ¶¶ 16-18.

4

On October 9, 2020, KPS filed this action asserting two causes of action seeking declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202.  Count One asserts claims for declaratory judgment as to tortious interference through competition, and seeks

> a declaratory judgment that KPS has not tortiously interfered and is not tortiously interfering with: (a) the provisions in Chumley, Burrus, and Woodard's Agreements prohibiting them for soliciting or accepting business of a similar nature to that which Triten provided to its customers; (b) the provision in Schellinger's Agreement prohibiting him from contacting Triten's clients for nine months; and (c) Article 9 of Switzer's Consultant Agreement.[10]

Count Two asserts claims for declaratory judgment as to tortious interference by employment, and seeks "a declaratory judgment that KPS has not tortiously interfered with the provisions in the Agreements purporting to prohibit the Former Employees from soliciting, inducing, or attempting to induce any other Triten employee to leave Triten to work for a competitor."[11]

## II. Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants argue that this action should be dismissed for lack of subject matter jurisdiction because

> KPS has failed to carry its burden to demonstrate this Court's subject matter jurisdiction under either of the two statutes it cites.  The Declaratory Judgment Act does not confer jurisdiction and KPS has not carried its

---

[10]Id. at 7 ¶ 20.  See also id. at 11 § VI (KPS's demands for judgment).

[11]Id. at 10 ¶ 37.

burden to establish diversity jurisdiction under 28
U.S.C. § 1332(a).[12]

KPS responds that the court has diversity jurisdiction, and that it has sufficiently alleged both complete diversity of citizenship, and the requisite amount in controversy.[13]   KPS does not dispute that the Declaratory Judgment Act does not confer subject matter jurisdiction on this court.   See Frye v. Andarko Petroleum Corp., 953 F.3d 285, 293 (5th Cir. 2019) ("A claim under the Declaratory Judgment Act is insufficient to confer federal question jurisdiction under 28 U.S.C. § 1331.").   See also Skelly Oil Co. v. Phillips Petroleum Co., 70 S. Ct. 876, 879 (1950) (recognizing that "the operation of the Declaratory Judgment Act is procedural only," and that by enacting it, "Congress enlarged the range of remedies available in federal courts but did not extend their jurisdiction").

A.    **Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) governs challenges to the court's subject matter jurisdiction.   "A case is properly dismissed for lack of subject matter jurisdiction when the court

---

[12]Defendants' Motion to Dismiss or Stay, Docket Entry No. 7, pp. 7.   See also Defendants' Reply in Support of Their Motions to Dismiss or Stay this Case ("Defendants' Reply"), Docket Entry No. 16, p. 6 (arguing that "Triten's state court claims do not establish the amount in controversy here").

[13]Plaintiff's Response, Docket Entry No. 14, pp. 9-11.

6

lacks the statutory or constitutional power to adjudicate the case." Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi, 143 F.3d 1006, 1010 (5th Cir. 1998). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Clark v. Tarrant County, Texas, 798 F.2d 736, 741 (5th Cir. 1986). Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack consists of a Rule 12(b)(1) motion based solely on the pleadings unaccompanied by supporting evidence. Id. A factual attack challenges the existence of subject matter jurisdiction in fact -- irrespective of the pleadings -- and matters outside the pleadings -- such as testimony and affidavits -- are considered. Id. Although Defendants have not cited evidence outside of the pleadings in support of their motion to dismiss for lack of subject matter jurisdiction, because KPS has cited evidence outside of the pleadings in opposition to the Defendants' motion to dismiss, the court will treat the motion as a factual attack, and will not limit its review to whether Plaintiff's Complaint sufficiently alleges jurisdiction. KPS, as the party asserting federal jurisdiction, bears the burden of

showing that the jurisdictional requirements have been met.
<u>Alabama-Coushatta Tribe of Texas v. United States,</u> 757 F.3d 484,
487 (5th Cir. 2014).  When facing a challenge to subject matter
jurisdiction and other challenges on the merits, courts must
consider the jurisdictional challenge before addressing the merits
of the case.  <u>Id.</u>

**B.   Analysis**

KPS asserts diversity jurisdiction by alleging that

> the parties are citizens of different states, and the
> amount in controversy exceeds $75,000.00 exclusive of
> interest and costs.  KPS is a citizen of Kansas within
> the meaning of 28 U.S.C. § 1332 because its members are
> Kansas residents.  IAG is a citizen of Texas within the
> meaning of 28 U.S.C. § 1332 because its members are Texas
> residents.  Triten is a citizen of Texas within the
> meaning of 28 U.S.C. § 1332 because it is incorporated in
> Texas and has its principle place of business in Texas.[14]

Defendants argue that "KPS has not properly invoked the Court's
diversity jurisdiction both because KPS (an LLC) has not alleged
the citizenship of its members (and thus failed to establish
complete diversity) and because KPS has not shown that the amount
in controversy exceeds $75,000."[15]

---

[14]Plaintiff's Complaint, Docket Entry No. 1, pp. 2-3, ¶ 5.

[15]Defendants' Motion to Dismiss or Stay, Docket Entry No. 7,
p. 7.

8

1.  Plaintiff  Will  Be  Ordered  to  Supplement  the
    Jurisdictional  Facts  Alleged  to  Establish  Complete
    Diversity of Citizenship

Quoting MidCap Media Finance, L.L.C. v. Pathway Data, Inc.,

929 F.3d 310, 314 (5th Cir. 2019), Defendants argue that

> KPS's diversity allegations are at best incomplete.  KPS
> claims Kansas citizenship, Compl. ¶ 5, but as an LLC it
> cannot rest on that allegation alone and instead must
> also identify its "members and allege their citizenship."
> . . KPS did not identify its members and has therefore
> failed to establish complete diversity.[16]

KPS responds that  Defendants' objection to their allegations of

diversity  is  moot  because  "[a]s  demonstrated  in  the  attached

Declaration of Scott A. Campbell, KPS is a citizen of Kansas, New

York, and California — no member is a resident or citizen of Texas.

. . . The parties are completely diverse."[17]

"Jurisdiction  cannot  be  waived,  and  it  is  the  duty  of  a

federal court first to decide, sua sponte if necessary, whether it

has jurisdiction before the merits of the case can be addressed."

Filer v. Donley, 690 F.3d 643, 646 (5th Cir. 2012).  See also

A.I.M. Controls, L.L.C. v. Commissioner of Internal Revenue, 672

F.3d 390, 392 (5th Cir. 2012) ("Federal courts 'must raise and

decide jurisdictional questions that the parties either overlook or

elect not to press.'") (quoting Henderson ex rel. Henderson v.

Shinseki, 131 S. Ct. 1197, 1202 (2011)).

---

[16]Id. at 8.

[17]Plaintiff's Response, Docket Entry No. 14, p. 9.

Under 28 U.S.C. § 1332 there must be complete diversity of citizenship between plaintiffs and defendants. McLaughlin v. Mississippi Power Co., 376 F.3d 344, 353 (5th Cir. 2004) (per curiam) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806)). "'The concept of complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side.'" Id. (quoting Harrison v. Prather, 404 F.2d 267, 272 (5th Cir. 1968) (per curiam)). Moreover, federal courts are courts of limited jurisdiction, Kokkonen v. Guardian Life Insurance Co. of America, 114 S. Ct. 1673, 1675 (1994), and therefore "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." Howery v. Allstate Insurance Co., 243 F.3d 912, 916 (5th Cir.), cert. denied, 122 S. Ct. 459 (2001).

In MidCap Media the Fifth Circuit repeated the well-established rule of law that "[t]he citizenship of a[n] LLC is determined by the citizenship of all of its members." 929 F.3d at 314 (quoting Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1080 (5th Cir. 2008)). See also Carden v. Arkoma Associates, 110 S. Ct. 1015, 1021 (1990) ("[W]e reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members. We adhere to our oft-repeated rule that

10

diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members[.]'") (citations omitted). "So, to establish diversity jurisdiction, a party 'must specifically allege the citizenship of every member of every LLC.'" MidCap Media, 929 F.3d at 314 (quoting Settlement Funding, L.L.C. v. Rapid Settlements, Ltd., 851 F.3d 530, 536 (5th Cir. 2017)). Thus, when members of a limited liability company are themselves entities or associations, citizenship must be traced through however many layers of members there are until arriving at the entity that is not a limited liability company. See Mullins v. TestAmerica, Inc., 564 F.3d 386, 397-98 (5th Cir. 2009). See also Alphonse v. Arch Bay Holdings, L.L.C., 618 F. App'x 765, 768 (5th Cir. 2015) (per curiam) ("[N]o case law has suggested that [the conclusion reached in Harvey, 542 F.3d at 1080,] may be disregarded when one of the LLC's members is an artificial entity comprised of additional entities.").

Plaintiff's Complaint states that "KPS is a limited liability company organized under the laws of Delaware and authorized to transact business in Texas.  It's principal place of business is in Wichita, Kansas, and its members are Kansas residents,"[18] and that "IAG is a limited liability company organized under the laws of Delaware and authorized to transact business in Texas.   Its principal place of business is in Houston, Texas, and its members

---

[18]Plaintiff's Complaint, Docket Entry No. 1, p. 2 ¶ 2.

11

are Texas residents."[19]  Plaintiff's Complaint fails to identify either the members of KPS or IAG or their respective states of citizenship.  Under MidCap Media, 929 F.3d at 314, Harvey, 542 F.3d at 1080, and Carden, 110 S. Ct. at 1021, KPS's allegations are not sufficient to establish complete diversity of citizenship.

In response to Defendant's Motion to Dismiss, KPS has submitted the Declaration of Scott A. Campbell, which identifies all of the members of KPS, and traces through many layers of members until arriving at the entities that are not limited liability companies and identifying their respective states of citizenship.  The Campbell Declaration shows KPS to be a citizen of Kansas, New York, and California.[20]  Although Plaintiff's Complaint alleges that the members of defendant Alliance Process Partners, LLC, d/b/a IAG, are all Texas residents, neither Plaintiff's Complaint nor the Campbell Declaration identifies the members of Alliance Process Partners, LLC, d/b/a IAG, or their states of citizenship.  Bare allegations of residency are not sufficient to establish citizenship.  See MidCap Media, 929 F.3d at 314 (citing Robertson v. Cease, 97 U.S. 646, 647 (1878) ("Where the jurisdiction of a court of the United States depends upon the

---

[19]Id. ¶ 3.

[20]Declaration of Scott A. Campbell in Support of Plaintiff Koch Project Solutions, LLC's Response in Opposition to Defendants' Motion to Dismiss ("Campbell Declaration"), Exhibit 1 to Plaintiff's Response, Docket Entry No. 14-2.

citizenship of the parties, such citizenship, and not simply their residence must be shown on the record.")).

Since Defendants only argue that KPS has failed to identify and allege the citizenship of every LLC member, but have not argued that the parties are, in fact, not completely diverse, the court need not dismiss this action for lack of subject matter jurisdiction but may, instead, order KPS to supplement the jurisdictional facts alleged in Plaintiff's Complaint to establish complete diversity of citizenship by identifying Alliance Process Partners, LLC, d/b/a IAG's members and their respective states of citizenship.    See 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). See also Whitmire v. Victus Ltd., 212 F.3d 885, 887-88 (5th Cir. 2000) (explaining that "§ 1653 is be broadly construed to avoid dismissals of actions on purely 'technical' or 'formal' grounds," and that a "failure to specifically allege the citizenship of a party can be cured even in the appellate courts"). Accordingly, KPS will be ordered to supplement the jurisdictional facts alleged in Plaintiff's Complaint to establish complete diversity of citizenship by identifying Alliance Process Partners, LLC, d/b/a IAG's members and their respective states of citizenship within 14 days from the entry of this Memorandum Opinion and Order. Should KPS fail to do so, the court may dismiss this action for lack of subject matter jurisdiction.

2.  <u>Plaintiff Has Cited Evidence Showing that the Amount in
    Controversy is Sufficient for Diversity Jurisdiction</u>

Citing <u>Hunt v. Washington State Apple Advertising Commission,</u>

97 S. Ct. 2434, 2443 (1977), Defendants argue that

> KPS has not met its burden to show that the amount in
> controversy exceeds $75,000. KPS's purported injury —
> that Triten's state court allegations 'jeopardize KPS
> from being awarded projects by former Triten clients' —
> do not include a calculation or even an assessment of
> damages. Compl. ¶¶ 16-17. Nor does KPS identify any
> projects or potential projects that have been
> "jeopardize[d]," let alone attempt to ascribe them value.
> There is thus no basis from which the Court could find
> that the amount in controversy exceeds $75,000.[21]

Citing <u>Garcia v. Koch Oil Co. of Texas, Inc.,</u> 351 F.3d 636, 638

(5th Cir. 2003), Defendants argue that "[b]ecause its allegations

are lacking, KPS must prove by a preponderance of the evidence that

the amount in controversy requirement is met. . . . Yet KPS has

offered no such evidence. Unsworn statements about the <u>potential</u>

loss of <u>potential</u> (and unidentified) customers are not enough."[22]

KPS responds that "the amount in controversy exceeds $75,000,

and the Court need only take IAG and Triten's word for it."[23] KPS

argues that

> [e]ven though KPS is not a party in the state court
> action, IAG and Triten there seek the return of "[a]ny
> revenue generated by Koch Project Solutions" as part of
> their requested relief, and describe "large construction

---

[21]Defendants' Motion to Dismiss or Stay, Docket Entry No. 7,
p. 8.

[22]<u>Id.</u>

[23]Plaintiff's Response, Docket Entry No. 14, p. 10.

projects that have generated millions of dollars in revenue." (See [Dkt. 7-3], at pp. 6 [¶ 21], 16 [¶ 94].). They quantify their losses being in excess of $1 million. (Id. at p. 5 [¶ 11]). Though KPS contends there is nothing wrongful about its hiring and employing the former employees, and although the nature of the alleged interference at issue here differs from that alleged in state court, IAG and Triten value their supposed loss above $75,000 and cannot credibly value the alleged gain to KPS below that.[24]

Asserting that "[w]here the amount in controversy is satisfied, in order to justify dismissal, it must appear to a legal certainty that the claim is in fact for less than the jurisdictional amount," KPS argues that

> IAG and Triten provide no basis to infer that KPS's claim is definitively — that is, to a legal certainty — valued at less than $75,000, nor can they do so. There is no requirement that KPS delineate with detailed allegations and evidence the projects affected or that it carefully scrutinize and plead a damages model (for a declaratory judgment action). . . . Dismissal is not warranted, as the value of the claim at issue exceeds $75,000.[25]

"The party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000." Frye, 953 F.3d at 293 (quoting Garcia, 351 F.3d at 638 (citing St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998)). "[U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." St. Paul Reinsurance, 134 F.3d at 1253 (quoting St. Paul

---

[24] Id.

[25] Id. at 10-11.

Mercury Indemnity Co. V. Red Cab Co., 58 S. Ct. 586, 590 (1938)).
"To justify dismissal, 'it must appear to a legal certainty that
the claim is really for less than the jurisdictional amount.'" Id.
(quoting St. Paul Mercury, 58 S. Ct. at 590).  The Fifth Circuit
has held, however, "that this 'legal certainty' test has limited
utility — in fact is inapplicable — when the plaintiff has alleged
an indeterminate amount of damages."  Id. (citing DeAguilar v.
Boeing Co., 47 F.3d 1404, 1408 (5th Cir.), cert. denied, 116 S. Ct.
180 (1995)).  The Fifth Circuit has explained that

> [a]lthough most of our case law regarding § 1332's amount
> in controversy requirement has arisen in the context of
> removal from state to federal court, we find the
> procedures developed in those cases to be instructive in
> the converse context of declaratory judgment actions such
> as the one now before us.  In removal practice, when a
> complaint does not allege a specific amount of damages,
> the party invoking federal jurisdiction must prove by a
> preponderance of the evidence that the amount in
> controversy exceeds the jurisdictional amount.  The
> district court must first examine the complaint to
> determine whether it is "facially apparent" that the
> claims exceed the jurisdictional amount.  If it is not
> thus apparent, the court may rely "on summary judgment-
> type" evidence to ascertain the amount in controversy.
> Importantly, the jurisdictional facts must be judged as
> of the time the complaint is filed; subsequent events
> cannot serve to deprive the court of jurisdiction once it
> has attached.

Id. at 1253-54.  See also Allen v. R&H Oil & Gas Co., 63 F.3d 1326,
1335-36 (5th Cir. 1995) (explaining that the test is whether it is
more likely than not that the amount of the claim will exceed the
jurisdictional minimum).

Plaintiff's Complaint alleges that "the amount in controversy exceeds $75,000.00 exclusive of interest and costs,"[26] but "bare allegation, by itself, does not invest a federal court with jurisdiction." Dow Agrosciences LLC v. Bates, 332 F.3d 323, 326 (5th Cir. 2003), vacated on other grounds by Bates v. Dow Agrosciences LLC, 125 S. Ct. 1788 (2005). "When a complaint does not allege a specific amount of damages, the party invoking federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." St. Paul Reinsurance, 134 F.3d at 1253. See also Frye, 953 F.3d at 293 (same), and Garcia, 351 F.3d at 638-39 (same). "In actions seeking declaratory or injunctive relief, it is well established that "the amount in controversy is measured by the value of the object of the litigation," Hunt, 97 S. Ct. at 2443, meaning, "the value of the right to be protected or the extent of the injury to be prevented." St. Paul Reinsurance, 134 F.3d at 1252-53 (citing Leininger v. Leininger, 705 F.2d 727, 729 (5th Cir. 1983)(per curiam)).

The object of this litigation is KPS's right to compete with Defendants free from interference by the non-solicitation and non-compete agreements its employees — Switzer, Chumley, Schellinger, Burrus, and Woodard — entered with Defendants. Defendants' argue that KPS has failed to establish that the value of its claims exceed $75,000.00 because "KPS's purported injury — that Triten's

---

[26]Plaintiff's Complaint, Docket Entry No. 1, p. 2 ¶ 5.

state court allegations 'jeopardize KPS from being awarded projects by former Triten clients' — do not include a calculation or even an assessment of damages."[27]  While neither Plaintiff's Complaint nor KPS's response in opposition to the pending motion to dismiss provide information from which to calculate the value of any harm suffered by KPS, Defendants' argument ignores the value of the injury to be prevented, i.e., the benefit that KPS would receive if the court were to grant its request for declaratory judgment that it has not tortiously interfered and is not tortiously interfering with the non-solicitation and non-compete agreements signed by its employees.  See Hunt, 97 S. Ct. at 2443 ("Here, that object is the right of the individual Washington apple growers and dealers to conduct their business affairs in the North Carolina market free from the interference of the challenged statute.  The value of that right is measured by the losses that will follow from the statute's enforcement.").

As evidence of the value of the injury to be prevented, KPS cites the third-party claims that Defendants have asserted against its president, Switzer, its parent companies and one of their presidents in the state court lawsuit seeking "monetary relief over

---

[27]Defendants' Motion to Dismiss or Stay, Docket Entry No. 7, p. 8 (citing Plaintiff's Complaint, Docket Entry No. 1, pp. 6-7 ¶¶ 16-17).

$1,000,000,"[28] based on allegations that "Koch Industries has frequently hired Triten on large construction projects that have generated millions of dollars in revenue for Triten,"[29] that

> [t]he Koch Defendants have used Triten employees and know-how, obtainable only through tortious conduct, to compete for clients and projects[, and that a]ny revenue generated by Koch Project Solutions from those clients and projects was not earned by the Koch Defendants, and represents a benefit to the Koch Defendants at Triten's expense.[30]

A ruling in KPS's favor in this action could therefore confer a benefit in terms of avoiding Defendants' demand for "monetary relief over $1,000,000" in the state court lawsuit. See Monticello Insurance Co. v. Patriot Security, Inc., 926 F. Supp. 97, 99 (E.D. Tex. 1996) (looking to pleadings in a related state court action to determine the value of the declaratory relief sought in a federal action). Since, moreover, the first sentence of Defendants' Motion to Dismiss or Stay asserts that "[t]his declaratory judgment action asks the Court to rule that one party should prevail in a pending

---

[28]Plaintiff's Response, Docket Entry No. 14, p. 10 (citing Triten's First Amended Answer, Counterclaims, and Third-Party Claims, p. 5 ¶ 11, Exhibit 2 to Defendants' Motion to Dismiss or Stay, Docket Entry No. 7-3, p. 6 ¶ 11).

[29]Id. (citing Triten's First Amended Answer, Counterclaims, and Third-Party Claims, p. 6 ¶ 21, Exhibit 2 to Defendants' Motion to Dismiss or Stay, Docket Entry No. 7-3, p. 7 ¶ 21).

[30]Id. (citing Triten's First Amended Answer, Counterclaims, and Third-Party Claims, p. 16 ¶¶ 93-94, Exhibit 2 to Defendants' Motion to Dismiss or Stay, Docket Entry No. 7-3, p. 17 ¶¶ 93-94).

state court lawsuit . . .,"[31] and Defendants have neither argued that the value of KPS's claims are less than $75,000.00, nor offered any evidence from which the court could conclude that the value of the declaratory judgments that KPS seeks is less than $75,000.00, the court concludes that KPS has established by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum of $75,000.00.   See Frye, 953 F.3d at 293 (identifying the object of the litigation as information contained in a letter that the plaintiff wrote to the SEC, and asserting that "[g]iven the high value of the information at issue; [Defendant's] potential liability if the letter is released and contains the information that [Plaintiff] alleges; and, correspondingly, the amount that [Defendant] would likely claim in damages in a suit against [Plaintiff] . . ., the value of the object of the litigation easily exceeds the jurisdictional amount").

### III. **Defendants' Motion to Dismiss or Stay**

Citing Brillhart v. Excess Insurance Company of America, 62 S. Ct. 1173 (1942), Defendants urge the court to dismiss or stay this action because the issues can be better resolved in the proceeding

---

[31]Defendants' Motion to Dismiss or Stay, Docket Entry No. 7, p. 5.

pending in state court.[32]   KPS argues that the court should not
dismiss or stay this action because it "involves a plaintiff that
is not a party to the state court suit asserting allegations that
are unique to it."[33]   Citing <u>FinServ Casualty Corp. v. Settlement
Funding, LLC,</u> 724 F. Supp. 2d 662 (S.D. Tex. 2010), KPS argues that
the court cannot stay this action because doing so would "deny it
access to a court of competent jurisdiction and [require it to]
wait out a state court case to which it is not a party."[34]

A.   **Applicable Law**

The Federal Declaratory Judgment Act provides in part:

> In a case of actual controversy within its jurisdiction,
> . . . any court of the United States, upon the filing of
> an appropriate pleading, may declare the rights and other
> legal relations of any interested party seeking such
> declaration, whether or not further relief is or could be
> sought.

28 U.S.C. § 2201.   Observing that "[o]n its face, the statute
provides that a court '<u>may</u> declare the rights and other legal
relations of any interested party seeking such declaration," the
Supreme Court has "repeatedly characterized the Declaratory
Judgment Act as 'an enabling Act, which confers a discretion on the
courts rather than an absolute right upon the litigant.'" <u>Wilton</u>

---

[32]<u>Id.</u> at 9-14.

[33]Plaintiff's Response, Docket Entry No. 14, p. 12.

[34]<u>Id.</u>

v. Seven Falls Co., 115 S. Ct. 2137, 2143 (1995) (quoting Public
Service Commission of Utah v. Wycoff Co., Inc., 73 S. Ct. 236, 239
(1952).  See Skelly Oil, 70 S. Ct. at 879 (recognizing that the
Declaratory  Judgment  Act  does  not  confer  subject  matter
jurisdiction  on  this  court  because  its  "operation . . .  is
procedural only."); Public Affairs Associates, Inc. V. Rickover, 82
S. Ct. 580, 582 (1962) (per curiam) ("The Declaratory Judgment Act
was an authorization, not a command.  It gave the federal courts
competence to make a declaration of rights; it did not impose a
duty to do so.").  "Consistent with the nonobligatory nature of the
remedy, a district court is authorized, in the sound exercise of
its discretion, to stay or to dismiss an action seeking declaratory
judgment before trial . . ." Wilton, 115 S. Ct. at 2143.  "In the
declaratory judgment context, the normal principle that federal
courts should adjudicate claims within their jurisdiction yields to
considerations of practicality and wise judicial administration."
Id.

While  the  court's  discretion  in  matters  of  declaratory
judgment "is broad, it is not unfettered."  St. Paul Insurance
Company v. Trejo, 39 F.3d 585, 590 (5th Cir. 1994).  The Fifth
Circuit  has  held  that,  in  analyzing  whether  to  dismiss  a
declaratory judgment action, a district court must begin with a
three-step  analysis  to  determine:  (1)  whether  the  action  is
justiciable; (2) whether the court has the authority to grant

declaratory relief; and (3) whether the court should exercise its discretion to decide or dismiss the action. Sherwin-Williams Co. v. Holmes County, 343 F.3d 383, 387 (5th Cir. 2003) (citing Orix Credit Alliance, Inc. v. Wolfe, 212 F.3d 891, 895 (5th Cir. 2000)). The parties do not dispute that this action is justiciable, and that the court has the authority to grant declaratory relief; at issue is whether the court should exercise its discretion to do so.[35]

Whether the court should exercise jurisdiction over this declaratory judgment action rests on "whether the questions in controversy between the parties . . . can better be settled in the proceeding pending in the state court." Brillhart, 62 S. Ct. at 1176. The three key aspects of this analysis are (1) federalism, i.e., the proper allocation of decision-making between state and federal courts, (2) fairness, and (3) efficiency, consideration of which are guided by several non-exclusive factors. Sherwin-Williams, 343 F.3d at 390-91. The non-exclusive factors that district courts in this circuit consider in deciding whether to dismiss or stay a declaratory judgment action include:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

---

[35]Defendants' Motion to Dismiss or Stay, Docket Entry No. 7, p. 9 n. 1 (citing Orix, 212 F.3d at 895, and asserting that "[t]his motion focuses on the third step").

(2)   whether the plaintiff filed suit in anticipation of
        a lawsuit filed by the defendant;

(3)   whether the plaintiff engaged in forum shopping in
        bringing the suit;

(4)   whether possible inequities in allowing the
        declaratory plaintiff to gain precedence in time or
        to change forums exist;

(5)   whether the federal court is a convenient forum for
        the parties and witnesses;

(6)   whether retaining the lawsuit would serve the
        purposes of judicial economy; and

(7)   whether the federal court is being called on to
        construe a state judicial decree involving the same
        parties and entered by the court before whom the
        parallel state suit between the same parties is
        pending.

Id. at 388 (citing <u>Trejo,</u> 39 F.3d at 590-91).


**B.   Analysis**

Defendants argue that "[t]he Court should dismiss or stay
KPS's second-filed declaratory judgment action under <u>Brillhart</u>"
because the three relevant factors of federalism, fairness and
efficiency, and the seven factors the Fifth Circuit announced in
<u>Trejo,</u> 39 F.3d at 590-91, "point decisively towards abstention."[36]
KPS responds that "[b]ased on the <u>Trejo</u> factors, the Court should
not abstain or stay this case."[37]

_____

[36]<u>Id.</u> at 9.  <u>See also</u> Defendants' Reply, Docket Entry No. 16,
pp. 8-13.

[37]Plaintiff's Response, Docket Entry No. 14, p. 12.

24

1.   <u>Federalism</u>

The first <u>Trejo</u> factor, whether there is a pending state court action in which all of the matters in controversy may be fully litigated, and the seventh <u>Trejo</u> factor, whether the federal court is being called upon to construe a state judicial decree, concern the issue of federalism.  Respect for federalism counsels a federal court to abstain "if the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending."  <u>Sherwin-Williams</u>, 343 F.3d at 390-91. Because this court is not being called upon to construe a state judicial decree, the seventh factor is not relevant.  The court's consideration of federalism thus focuses on the first <u>Trejo</u> factor.

Asserting that KPS has raised only state law matters that are already pending in an underlying state court case, Defendants argue that federalism weighs strongly in favor of dismissal.[38]  Asserting that "KPS's declaratory judgment claims here (like Switzer's defenses in the state court action) rest on the interpretation of five employment contracts and on Texas tort law, both of which are state law matters,"[39] Defendants argue that

> there can be no real dispute that the state law matters raised in this action are already pending in state court. Here, KPS wants a declaration that the five former Triten employees who now work for KPS did not breach [] their

[38]Defendants' Motion to Dismiss or Stay, Docket Entry No. 7, p. 10.

[39]<u>Id.</u>

contractual non-compete obligations and, therefore, KPS
did not tortiously interfere with those contracts.
Comp. ¶¶ 1, 21-41.  That is also Switzer's defense in the
state court action, where he argues that neither he nor
the four other former IAG employees violated their
noncompete obligations by working for [KPS]. X1 ¶¶ 4-6.
The two cases therefore address the same five contracts,
the same five former IAG employees, and the same
defenses.  Compare X2 ¶¶ 76-85, with Compl. ¶¶ 11-13.
The duplicative litigation that will result if this Court
does not abstain "raise[s] federalism or comity concerns"
that can and should be avoided through abstention.[40]

KPS responds that

[Defendants] largely argue that the alleged parallel
nature of the suits compels a stay.  They are wrong.  A
parallel action exists where the previously filed state
court suit involves **precisely** the **same** parties litigating
**precisely** the **same** issues.  This suit is not a parallel
proceeding.  It involves a plaintiff that is not a party
to the state court suit asserting allegations that are
unique to it.  As this Court has noted, it cannot stay
KPS's claims to deny it access to a court of competent
jurisdiction and wait out a state court case to which it
is not a party.  See FinServ Casualty Corp. V. Settlement
Funding, LLC, 724 F. Supp. 2d 662 (S.D. Tex. 2010) (Lake,
J.) (where parties were separate legal entities, they
were not substantially the same for abstention
analysis).[41]

KPS argues that Defendants "fail to carry their burden — because

they cannot — to demonstrate that the state court action, where

_____

[40]Id. at 10-11 (citing Exhibit 1, PVS's and Switzer's Original
Answer to Triten's Counterclaims, Docket Entry No. 7-2, p. 3 ¶¶ 4-
6, and Exhibit 2, Triten's First Amended Answer, Counterclaims, and
Third Party Claims, Docket Entry No. 7-3, pp. 14-16 ¶¶ 76-85).

[41]Plaintiff's Response, Docket Entry No. 14, p. 12.

they elected not to sue KPS, is a parallel proceeding involving the **same parties** and **same issues**."[42]

Finserv and other cases cited by KPS are inapposite because neither Finserv nor many if not most of the other cases that KPS cites were declaratory judgment actions in which the federal courts are "under no compulsion to exercise . . . jurisdiction." Brillhart, 62 S. Ct. at 1175. Instead, Finserv and other cases cited by KPS are cases in which the courts had a duty to adjudicate disputes over which they had jurisdiction. See Colorado River Water Conservation District v. United States, 96 S. Ct. 1236, 1244 (1976) (recognizing an "extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it"). After the Supreme Court decided Colorado River, some circuits held that the standard stated in Colorado River superceded that stated in Brillhart and required district courts to hear declaratory judgment acts unless "exceptional circumstances" were present. See Sherwin-Williams, 343 F.3d at 389. In Wilton, 115 S. Ct. at 2137, however, "the Supreme Court resolved the circuit split, holding that the less demanding Brillhart standard applies [to declaratory judgment actions]." Sherwin-Williams, 343 F.3d at 389. Brillhart abstention is not confined to occasions where the proceedings are exactly parallel. See Wilton, 115 S. Ct. at 2141-43 (comparing and contrasting Brillhart, 62 S. Ct. at 1173, to

---

[42] Id.

Colorado River, 96 S. Ct. at 1236). When a pending state proceeding "is not 'parallel' because it does not involve all the same parties or issues," the court must consider "the extent of similarity." Sherwin-Williams, 343 F.3d at 394 n. 5.

KPS contends that the state court action is not sufficiently similar to this action to justify abstention because KPS is not a party to the state court action and, therefore, the state court will not decide the issues raised in this action, i.e., whether KPS has tortiously interfered with the non-solicitation and non-compete agreements that its five employees entered with the defendants. The court disagrees.

In the state court action, KPS's President, Switzer, and his consulting firm have sued the same defendants that KPS has sued in this action. In the state court action Defendants have asserted counterclaims against Switzer and third-party claims against KPS's parent companies for tortious interference with the same non-solicitation and non-compete agreements at issue in this action. As discussed in § II.B.2, above, with respect the amount in controversy, the counterclaims and third-party claims that Defendants have asserted in the state court action seek "monetary relief over $1,000,000,"[43] based on allegations that Switzer and

---

[43]Id. at 10 (citing Triten's First Amended Answer, Counterclaims, and Third-Party Claims, p. 5 ¶ 11, Exhibit 2 to Defendants' Motion to Dismiss or Stay, Docket Entry No. 7-3, p. 6 ¶ 11).

"[t]he Koch Defendants have used Triten employees and know-how, obtainable only through tortious conduct, to compete for clients and projects[, and that a]ny revenue generated by [KPS] from those clients and projects was not earned by the Koch Defendants, and represents a benefit to the Koch Defendants at Triten's expense."[44] Switzer and the third-party defendants in the state court action have the same interest in vigorously defending the counterclaims and third-party claims for tortious interference that Defendants have asserted against them in the state court action, as KPS has in seeking declaratory judgment that it has not tortiously interfered with the same agreements in this action.  See Deauville Corp. v. Federated Department Stores, Inc., 756 F.2d 1183, 1196-97 (5th Cir. 1985) (holding that a parent company and its subsidiary are so closely aligned in their business interests as to render them the same entity for tortious interference purposes).  See also Copperweld Corp. v. Independence Tube Corp., 104 S. Ct. 2731, 2741-42 (1984) (recognizing that a parent company's and its subsidiary's "general corporate actions are guided or determined not by two separate corporate consciousnesses, but one" and that both companies "always have unity of purpose or a common design").

Here, a state court action is pending, the state court action arises out of the same facts and circumstances, and involves the

---

[44]Id. (citing Triten's First Amended Answer, Counterclaims, and Third-Party Claims, p. 16 ¶¶ 93-94, Exhibit 2 to Defendants' Motion to Dismiss or Stay, Docket Entry No. 7-3, p. 17 ¶¶ 93-94).

same contractual issues as this declaratory judgment action. Although the state court action involves KPS's president, Switzer, and KPS's parent companies instead of KPS, KPS, its president, Switzer, and its parent companies share the same interests and motivations in both the state and federal actions. Although the state court action involves both additional state law claims and additional parties, all of the material questions necessary to decide the issues raised in this declaratory judgment action are governed by state law and can be resolved in the state court action. The court concludes therefore that the federalism factor weighs strongly in favor of dismissing or staying this action. See Sherwin-Williams, 343 F.3d at 390-91 ("[I]f the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit.").

2.   Fairness

The next three Trejo factors — whether KPS filed this action in anticipation of a lawsuit filed by the Defendants, whether KPS engaged in forum shopping in bringing this action, and whether possible inequities exist in allowing KPS to gain precedence in time or to change forums — "analyze whether the plaintiff is using the declaratory judgment process to gain access to a federal forum

30

on improper or unfair grounds." <u>Sherwin-Williams</u>, 343 F.3d at 391.

Citing <u>Illinois Central Railroad Co. v. Cain</u>, 434 F. Supp. 2d 415, 421 (S.D. Miss. 2006), for its statement that "[t]he Declaratory Judgment Act is not a tool [to] be used by potential litigants to secure a forum of their choosing,"[45] Defendants argue "that is exactly what KPS attempts to do here."[46]  Asserting that "[t]he only reason Switzer had his company bring these claims in federal court (as opposed to adding KPS as a party in the already pending state court action) is because Switzer wants to avoid state court adjudication in favor of this federal forum,"[47] Defendants argue "[t]hat is quintessential forum shopping that justifies dismissal of KPS's second-filed action," and that "KPS cannot use the Declaratory Judgment Act to avoid having [their] counterclaims heard in state court."[48]

KPS responds that Defendants' "'forum shopping' arguments are not persuasive and . . . ignor[e] that KPS is a separate legal entity."[49]  Asserting that there are no allegations of alter ego, KPS responds that filing this declaratory action in federal court

---

[45]Defendant's Motion to Dismiss or Stay, Docket Entry No. 7, p. 12.

[46]<u>Id.</u>

[47]<u>Id.</u>

[48]<u>Id.</u>

[49]Plaintiff's Response, Docket Entry No. 14, p. 18.

is not forum shopping but, instead, an effort to avail itself of diversity jurisdiction to have its rights adjudicated.[50]  The court is not persuaded by KPS's arguments.

KPS filed the instant action on October 9, 2020.[51]  Although the record before the court does not show the date on which the state court action was filed, the factual allegations in Plaintiff's Complaint establish that both the state court action and Defendants' counterclaims against KPS's president, Switzer, and third-party claims against KPS's parent companies were filed first.[52]  KPS alleges that

> [d]espite referring to KPS in their pleadings, Defendants
> did not name KPS as a third-party defendant but
> nevertheless still accuse KPS of hiring away the Former
> Employees to compete for projects that "otherwise would
> have gone to Triten" by allegedly inducing the Former
> Employees to violate their Agreements.  Further, after
> being informed that they had sued the wrong party,

---

[50]Id.

[51]Plaintiff's Complaint, Docket Entry No. 1, p. 1.

[52]Id. at 6 ¶¶ 15-16 (alleging that "in March 2020, Defendants advised the president of KPS's parent company that Defendants believed KPS was involved in inducing the Former Employees to violate their respective Agreements, ostensibly by causing or directing them to 'solicit or accept' business on behalf of KPS in connection with Triten and soliciting Triten employees," and that "[s]hortly thereafter, in a Texas state court lawsuit, Defendants elevated their objections in a public filing naming KPS's direct and indirect parent companies (Koch Engineered Solutions, LLC and Koch Industries, Inc.), . . . as third-party defendants to a lawsuit involving Switzer's individual claim for unpaid compensation owed by Triten and/or IAG under his Consulting Agreement").

> Defendants declined to amend their pleading to include
> KPS or omit its parent companies.[53]

Moreover, KPS acknowledges that "[t]he state court action to which KPS is not a party did not include third-party claims until July 2020, three months before KPS filed this suit."[54]  Thus, this action was not filed in anticipation of, but in response to, the counterclaims and third-party claims for tortious interference that Defendants filed against KPS's president, Switzer, and KPS's parent companies in state court.   Because for the reasons stated in § III.B.1, above, the court has already concluded the KPS's interests in this declaratory action are the same as the interests of it's president, Switzer, and it's parent companies in the state court action, and that resolution of the issues raised in this declaratory action would also resolve the issues raised by the claims for tortious interference that Defendants have asserted in the state court action, the court concludes that the filing of this declaratory action in federal court is, in fact, an effort by KPS not only to forum shop, but also to gain precedence by having this court instead of the state court decide the issues raised by the tortious interference claims asserted in both actions. Accordingly, the court concludes that the fairness factors weigh in favor of dismissal or stay.

---

[53]Id. ¶ 16

[54]Plaintiff's Response, Docket Entry No. 14, p. 7.

3.   Efficiency

The last two Trejo factors — whether the federal court is a convenient forum for the parties and witnesses, and whether retaining the declaratory action would serve the purposes of judicial economy — address the aspect of efficiency.   The Fifth Circuit has instructed district courts that

> [a] federal district court should avoid duplicative or piecemeal litigation where possible.  A federal court should be less inclined to hear a case if necessary parties are missing from the federal forum, because that leads to piecemeal litigation and duplication of effort in state and federal courts.  Duplicative litigation may also raise federalism or comity concerns because of the potential for inconsistent state and federal court judgments, especially in cases involving state law issues.

Sherwin-Williams, 343 F.3d at 391.

Defendants argue that whether the federal court is a convenient forum for the parties and witnesses is neutral because both the state and federal actions are before courts located in Harris County, Texas, where the state and federal courthouses are only a few blocks apart.[55]  Citing Admiral Insurance Co. v. Little Big Inch Pipeline Co., Inc., 496 F. Supp. 2d 787, 794 (W.D. Tex. 2007), KPS argues that when both forums are convenient, this factor weighs in favor of proceeding in the federal forum.[56]   The court

---

[55]Defendants' Motion to Dismiss or Stay, Docket Entry No. 7, p. 14.  See also Defendants' Reply, Docket Entry No. 16, p. 12.

[56]Plaintiffs' Response, Docket Entry No. 14, p. 19.

34

concludes that the fifth <u>Trejo</u> factor is neutral and, therefore, equally convenient for the parties and the witnesses.

Regarding the sixth <u>Trejo</u> factor, Defendants argue that

> [j]udicial economy weighs "heavily" in favor of dismissal because . . . [i]t is "a waste of judicial resources to litigate a federal declaratory judgment action involving only issues of state law that are already being litigated" in state court. . . Here, the parties are actively litigating these issues in state court pursuant to a docket control order with an October 2021 trial date. X5. Retaining this case would duplicate those efforts and waste, rather than conserve, judicial resources.[57]

KPS responds that retaining jurisdiction serves purposes of judicial economy because "'the parties' are not litigating these issues in state court, where KPS is not actually a party,"[58] and because

> [n]ot only have the purportedly "substantially similar" third-party defendants not participated in discovery, but the state court has entered a protective order against the discovery propounded on them. Additionally, [the third-party defendants] have all filed special appearances contesting jurisdiction and special exceptions contesting the adequacy of the Third-Party Petition. To be clear, far from being in "active discovery," [Defendants] claims have not, as of the time of this filing, advanced passed the jurisdictional or pleading stage.[59]

---

[57]Defendants' Motion to Dismiss or Stay, Docket Entry No. 7, p. 14 (citing Exhibit 5, Agreed Scheduling Order Entered in the State Court Action, Docket Entry No. 7-6).

[58]Plaintiff's Response, Docket Entry No. 14, p. 20.

[59]<u>Id.</u>

In addition KPS has supplemented its response "to notify the Court that after KPS filed its Opposition, the state court granted Special Appearances of Koch Industries, Koch Engineered Solutions, and David Dotson, [i.e., the third-party defendants in the state court action], dismissing them from the state court action because of the absence of personal jurisdiction in that court."[60]   KPS argues that "[g]iven the dismissals, Defendants' arguments to dismiss or stay under Brillhart . . . are moot, as those 'Koch Defendants' are no longer parties to the [state court proceeding]. Thus, there is nothing remaining that can be better settled in the state court proceeding."[61]

Defendants reply that the state court's dismissal of the third-party defendants is "currently on appeal," and does not include KPS's president, Switzer.[62]   Defendants argue that

> both Switzer and Triten have served and responded to discovery, see X2, X3, so KPS's claim about the status of the case is puzzling, to say the least.  It is true that the Koch entities . . . have objected to participating in discovery and that the state court recently granted their special appearances, but those facts have little to do with the issue of judicial economy, particularly as Switzer, the President of KPS, remains a party to the state proceeding and the special appearance ruling as to

---

[60]Plaintiff's Supplement, Docket Entry No. 15, pp. 1-2 (citing Exhibit 1, Orders Granting Amended Special Appearances, Docket Entry No. 15-1, pp. 2-4).

[61]Id. at 2.

[62]Defendants' Reply, Docket Entry No. 16, p. 5.

[the Koch third-party defendants is . . . subject to further review.[63]

This declaratory judgment action involves two issues: (1) whether KPS has tortiously interfered with the its employees' post-employment obligations to refrain from soliciting or accepting business from, or contracting, Triten clients; and (2) whether KPS has tortiously interfered with any prohibition on soliciting or hiring any Triten employees.[64] The state court action involves not only tortious interference claims against KPS's president, Switzer, whose interest in vigorously defending those claims is the same as KPS's interest, but also involves additional state law claims and at least one — and possibly more — additional parties. Were this court to resolve the declaratory judgment action before it, the related claims at issue in the state court action would remain unresolved, and the parties would still be required to litigate the state court action. To the contrary, all issues raised by the claims asserted in this declaratory judgment action can be resolved in the state court proceeding. It would thus be inefficient and uneconomical for this action to proceed. As the Fifth Circuit has recognized:

> A federal court should be less inclined to hear a case if necessary parties are missing from the federal forum, because that leads to piecemeal litigation and duplication of effort in state and federal courts.

---

[63]Id. at 12.

[64]Plaintiff's Complaint, Docket Entry No. 1, p. 2.

> Duplicative litigation may also raise federalism or comity concerns because of the potential for inconsistent state and federal court judgments, especially in cases involving state law issues.

Sherwin-Williams, 343 F.3d at 391.  The court therefore concludes that the efficiency factors weigh in favor of dismissal or stay.


C.   **Conclusions**

Having considered the issues of federalism, fairness, and efficiency, and guided by the Trejo factors, the court concludes that the state court action presents the better forum for deciding the questions in controversy here — including the potentially case-dispositive tortious interference issues.  The Supreme Court has noted that "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." Wilton, 115 S. Ct. at 2143 n. 2.  The court will therefore grant the Defendants' motion to stay the case pending final adjudication in the state court suit.


IV. **Conclusions and Order**

For the reasons stated in § II, above, the court concludes that Plaintiff has shown that the amount in controversy is sufficient to satisfy the requirements for diversity jurisdiction, and that complete diversity of citizenship likely exists in this

case, but that the jurisdictional facts alleged in Plaintiff's Complaint must be supplemented to identify IAG's members and their respective states of citizenship. Accordingly, Defendants' Motion to Dismiss for lack of subject matter jurisdiction is **DENIED**. Plaintiff is **ORDERED** to supplement the jurisdictional facts alleged in Plaintiff's Complaint within 21 days. Should KPS fail to comply with the order to supplement the jurisdictional facts alleged in Plaintiff's Complaint to show complete diversity of citizenship, the court may dismiss this action <u>sua sponte</u> for lack of subject matter jurisdiction.

For the reasons stated in § III, above, the court concludes that Defendants' Motion to Dismiss should be **DENIED** but that this action should be **STAYED** pending final adjudication in the state court action.

Accordingly, Defendants' Motion Defendants' Motion to Dismiss or Stay Plaintiff's Declaratory Judgment Action, Docket Entry No. 7, is **GRANTED in PART and DENIED in PART**. Plaintiff Koch Project Solutions, LLC's request for leave to amend included in its Response in Opposition to Defendants' Motion to Dismiss or Stay, Docket Entry No. 14, is **DENIED as MOOT**.

This action is **STAYED** pending further order of the court.

The January 29, 2021, Initial Pretrial and Scheduling Conference is **CANCELED**.

The parties are **ORDERED** to submit a joint status report on April 2, 2021, and every sixty (60) days thereafter until the stay is lifted.

**SIGNED** at Houston, Texas, on this the 22nd day of January, 2021.

_____

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE